AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

**2002 yellow Volkswagen Beetle with Missouri license plate, xxxxxx and Vehicle Identification Number (VIN) xxxxxx**

### APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

CASE NUMBER:

(Further described below)

I     Ryan M. Pardee     being duly sworn depose and say:

I am a(n) Special Agent with the Federal Bureau of Investigation and have reason to believe
      (Official Title)

that (name, description and or location) **A 2002 yellow Volkswagen Beetle with Missouri license plate xxxxxx and Vehicle Identification Number (VIN) xxxxxx**

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property to be searched) **illegal phencyclidine(PCP) and other evidence of an illegal conspiracy to distribute and possess with intent to distribute PCP**

which is (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)
 **evidence and contraband**

concerning a violation of Title 21 United States Code, Section(s)841(a)(1) and 846.  The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.    ☒  YES   ☒   NO

xxxxxx

Sworn to before me, and subscribed in my presence

_____

Date

Signature of Affiant
,

at _____, Maryland

Name and Title of Judicial Officer          Signature of Judicial Officer

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**Re: Application for Search Warrants for:**

**2002 yellow Volkswagen Beetle with**
**Missouri license plate, xxxxxx and**
**Vehicle Identification Number**
**(VIN) xxxxxx**

## AFFIDAVIT

Ryan M. Pardee, Special Agent (SA) with the Federal Bureau of Investigation (FBI), Washington Field Office (WFO), Washington, D.C. (hereinafter "affiant"), being duly sworn, deposes and states as follows:

## BACKGROUND AND EXPERIENCE

1.    Your affiant is "an investigative or law enforcement officer" of the United States within the meaning of Title 18 United States Code Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18 United States Code.

2.    Your affiant has been a Special Agent (SA) with the Federal Bureau of Investigation (FBI) since 2003.  Your affiant is currently assigned to Squad CR-3 in the FBI's Washington Field Office (WFO), which is responsible for conducting investigations that target large drug trafficking organizations.  From 2003 to present, your affiant has been working on federal narcotics investigations that have led to the arrest and conviction of narcotics dealers.  Since 2003, your affiant has received training and experience in interviewing and interrogation techniques, arrest procedures, search and seizure, search warrant applications, narcotics, money laundering, and various other

1

crimes.  In the course of that training and experience, your affiant has become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of narcotics proceeds, and the organization of narcotics conspiracies.  In the course of conducting these investigations, your affiant has been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification system data; conducting court-authorized electronic surveillance; and preparing and executing search warrants that have led to substantial seizures of narcotics, firearms, and other contraband.  Based on your affiant's training, experience and participation in narcotic and drug related investigations, your affiant knows that:

a. Individuals who deal in illegal controlled substances maintain books, records, receipts, notes, ledgers, bank records, money orders and other papers relating to the importation, manufacture, transportation, ordering, sale and distribution of illegal controlled substances.  These books, records, receipts, notes, ledgers, bank records, money orders, etc., are maintained where the dealers in illegal controlled substances have ready access to them, such as in secured locations within their residence, the residences of friends, family members, and associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house or in a vehicle controlled by the trafficker. Moreover, it is common that such records are maintained by traffickers on computers, cellular telephones, PDAs often called "Palm Pilots," and laptop computers and other personal electronic devices.

b. Individuals who deal in illegal controlled substances routinely conceal in their residences or the residences of friends, family members, and associates, or in the places of operation of the drug

2

distribution activity, such as a stash house or safe house, large quantities of currency, financial instruments, precious metals, jewelry and other items of value, typically proceeds of illegal controlled substance transactions.

c. It is common for individuals who deal in the sale and distribution of illegal controlled substances, such as phencyclidine, cocaine and heroin, to secrete contraband related to the activity, such as scales, razors, packaging materials, cutting agents, cooking utensils, buckets, funnels, presses,  pots, dishes and other containers for converting cocaine into cocaine base, at their residences, or the residences of friends, family members, or associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house.  Specifically, persons dealing in cocaine base, also known as crack, commonly maintain quantities of cocaine hydrochloride, also known as cocaine powder, because it is a necessary ingredient in the production or manufacture of cocaine base, also known as crack.

d. Individuals who deal in the sale and distribution of controlled substances commonly maintain addresses and telephone number books or papers which reflect names, addresses and/or telephone numbers for their associates in their illegal organization.  These individuals often utilize cellular telephones, pagers and telephone systems to maintain contact with their associates in their illegal businesses.  These telephone records, bills and pager numbers are often found in their place of residence, or the residence of friends, family members, or associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house or in a vehicle controlled by the trafficker.

e. Individuals who deal in illegal controlled substances often take photos of themselves, their associates, their property and illegal contraband.  These photos are usually maintained in their place

of residence, or the residences of friends, family members, or associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house.

f. Persons who traffic controlled substances maintain documents, letters and records relating to illegal activity for long periods of time. This documentary evidence is usually secreted in their residence, or the residences of friends, family members, or associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house. This documentary evidence includes but is not limited to telephone numbers, telephone books, address books, credit card and hotel receipts, plane and bus tickets and receipts, car rental receipts, accounts and records in fictitious names, false identification, money orders, cashiers checks relating to cash transactions and records indicating the existence of storage facilities used in narcotics trafficking.

g. Individuals involved in narcotics trafficking often own, possess and/or use weapons as a means to facilitate their illegal drug activities. Such weapons are most often secreted in their residence, or the residences of friends, family members, or associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house.

h. Individuals involved in narcotics trafficking often transport those narcotics to and from transactions in vehicles the trafficker owns or controls. The transportation of narcotics in such vehicles leaves microscopic evidence of their presence which can be detected by the use of certain scientific procedures. Moreover, the vehicles used by narcotics traffickers are frequently equipped with hidden compartments used to secrete drugs and weapons.

3.    Through instruction, training and participation in investigations, your affiant has become familiar with the manner and methods by which narcotics traffickers conduct their illegal business including the laundering of funds generated by illegal narcotics trafficking, and the

language and terms that are used to disguise conversations about their narcotics activities including the laundering of funds generated by illegal narcotics trafficking. From experience and training, your affiant has learned, among other things, that: (a) in conversations which drug traffickers believe are susceptible to interception, drug traffickers virtually never expressly refer to PCP or other illegal drugs by name; instead, to conceal the true nature of their illegal activities and to thwart detection by law enforcement, they refer to the drugs and drug quantities using seemingly innocent terms; (b) narcotics traffickers frequently use cellular telephones to further their illegal activities by, among other things, remaining in constant or ready communication with one another without restricting either party to a particular location at which they might be the subject of physical surveillance by law enforcement authorities, and because they erroneously believe that interception of cellular communications is impossible or at least more difficult than interception of land-line telephones; and (c) drug traffickers frequently hold meetings or conduct business in their vehicles or those of trusted associates because they believe that the vehicle's mobility and limited size promote the security and privacy of their activities and conversation.

4.     Your affiant is currently participating in an investigation which targets PCP, heroin and cocaine traffickers operating in the District of Columbia. The investigation began in November of 2005. The main targets of this investigation are LONNELL GEORGE GLOVER and ANTHONY MAURICE SUGGS, also known as "APPLEJACK." Based upon this investigation, the electronic surveillance connected with that investigation,  as well as the recent searches and seizure of more than 6 gallons of PCP, more than 300 grams of heroin, and your affiant's training and experience, your affiant has reason to believe GLOVER and SUGGS are large-scale narcotics

traffickers operating in the metropolitan Washington area. This investigation has disclosed that GLOVER and SUGGS and their associates have distributed heroin, cocaine and PCP.

5.     Beginning on February 9, 2007, the Honorable Rosemary M. Collyer of this Court signed an order authorizing the interception of wire communications over a cellular telephones used by Lonnell George Glover. With appropriate extensions[1] as required by law, wire communications over that cellular telephone were monitored continuously through at least June 11, 2007.

## II.  LOCATION TO BE SEARCHED

6.     This affidavit is being submitted in support of an application which seeks authorization to search the following vehicle:

> **A 2002 yellow Volkswagen Beetle with Missouri license plate xxxxxx and Vehicle Identification Number (VIN) xxxxxx**

## III.  FACTS AND CIRCUMSTANCES

7.     On June 8, 2007, June 14, 2007 and June 15, 2007, before this Court your affiant swore to affidavits in support of requests for search warrants relating to a conspiracy to distribute and possess with intent to distribute phencyclidine (PCP) and heroin involving Lonnell George Glover, Velma Williams and others.   With regard to establishing probable cause that Glover, Williams and others were, until June 12, 2007, conspiring to distribute and possess with intent to distribute PCP and heroin, your affiant requests that the Court rely upon your affiant's aversions therein and incorporate those affidavits herein by reference.  Further, with regard to establishing probable cause that Williams and all others in the indictment were, until June 12, 2007, conspiring

---

[1]1     Judge Collyer signed extensions March 9, 2007, April 5, 2007, May 4, 2007, and June 2, 2007.  In addition to monitoring Glover's cellular telephone, law enforcement monitored Suggs' cellular telephone and conversations in Glover's pick up truck.

to distribute and possess with intent to distribute PCP and heroin, your affiant notes that on June 12, 2007, a grand jury of this court returned an Indictment charging, *inter alia*, defendants with conspiring to distribute and possess with intent to distribute PCP and heroin.

8.    On June 12, 2007, at 2:07 p.m., Glover received a call on the his monitored cellular telephone from Williams and the call was intercepted.  Williams advised that she had just returned from her granddaughter's graduation and said "Well um, I was going to come by, but uh do you think next week will be better?"  Glover responded that he was available and Williams said "Oh okay, okay, well um, I'll, I'll come by Monday how's that?"  Glover agreed Monday would be good and Williams responded "I'll be there, be by your house Monday."    Williams used one of the two telephones subject to cell site and GPS orders and the call site data reflects that Williams was in St. Louis, Missouri, when she had this conversation with Glover.  Williams is also associated with an address at xxxxxx.  Based on training and experience in this and other investigations, your affiant submits that Williams was scheduling a time to deliver PCP to Glover and they agreed on Monday, June 18, 2007.

9.    On June 18, 2007 Velma Williams traveled from Missouri to Maryland in a yellow Volkswagen Beetle with Missouri registration, license plate xxxxxx and Vehicle Identification Number (VIN) xxxxxx.  Based on training and experience in this and other investigations, your affiant submits that Williams was driving to Maryland to deliver an unknown amount of PCP to Glover.

10.    On June 19, 2007 the Federal Bureau of Investigation arrested Williams on charges of conspiring to distribute and possess with intent to distribute PCP and heroin.  At the time of the arrest a police dog trained to detect the presence of illegal narcotics was used to examine the above-

7

described Volkswagen Beetle that Williams used to travel from Missouri to Maryland. During the course of the examination the dog "alerted" on the area of the driver's side headlight, that is, the dog signaled that it detected signs of the presence of an illegal narcotic substance in that area.. The vehicle was seized for forfeiture and is currently being stored at an FBI facility in the District of Columbia. This is an indication that illegal narcotics are now or have been in the past located in that front headlight area. Trooper Lee Elliott of the Virginia State Police who is trained and experienced in the detection and use of hidden traps in automobiles and other vehicles, advises that headlight of the Volkswagen Beetle is often used as "trap" or concealed compartment for transporting illegal narcotics without discovery. Further, your affiant is aware from training and experience that any area in which illegal narcotics were stored can be processed for forensic trace evidence of the former presence of such illegal narcotics.

### CONCLUSION

Your affiant submits that based upon the facts set out herein there is probable cause to believe that the yellow Volkswagen Beetle, with Missouri registration, license plate xxxxxx and Vehicle Identification Number (VIN) xxxxxx, Velma Williams used to travel from Missouri to Maryland is currently concealing illegal narcotics and that the said vehicle has been used in the past for the same purpose. As this affidavit has demonstrated, there is probable cause to believe that Williams was making a trip to this area on June 18, 2007 for the purposes of delivering drugs, specifically PCP, to co-conspirators. It is the intention of the FBI to seize the illegal narcotics Williams was transporting. We submit that this affidavit, taken in concert with the previous affidavits sworn to before this Court in connection with this matter, establishes probable cause that evidence related to the aforementioned conspiracies may be found in the vehicle described above.

**WHEREFORE** your affiant respectfully requests that a warrant issue for the 2002 yellow Volkswagen Beetle with Missouri registration xxxxxx and Vehicle Identification Number (VIN) xxxxxx permitting the search of the vehicle for illegal narcotics and other evidence of the illegal conspiracy involving Williams, Glover and others, and authorizing the FBI to process that vehicle for forensic trace evidence.


_____

RYAN M. PARDEE, Special Agent
Federal Bureau of Investigation

SUBSCRIBED TO AND SWORN before me this _____ day of June, 2007.


_____

JOHN M. FACCIOLA
United States Magistrate Judge
  for the District of Columbia

## ATTACHMENT A

(a)    Books, records, receipts, notes, ledgers, and other papers including any computerized or electronic records, relating to the transportation ordering, purchase and distribution of controlled substances, in particular, cocaine, heroin and phencyclidine (PCP)  Schedule I and II controlled substances.

(b)    Address and/or telephone books and papers reflecting names, addresses and/or telephone numbers including computerized or electronic address and/or telephone records.

(c)    Books, records, receipts, bank statements and records money drafts, letters of credit, money orders and cashier's checks, receipts, passbooks, bank checks, and any other items evidencing the obtaining, secreting, transfer, and/or concealment of assets.

(d)    Proceeds of narcotics violations including United States currency, precious metals, jewelry and financial instruments, including but not limited to, stocks and bonds.

(e)    Photographs, in particular, photographs of co-conspirators, of assets, of weapons, and/or of controlled substances, and other documents identifying associates and co-conspirators.

(f)    Indicia of occupancy, residence and/or ownership of the premises, including but not limited to, utility and telephone bills, canceled envelopes and keys.

(g)    Indicia of travel, including, but not limited to, passport, visas, airline tickets, boarding passes, and airline receipts.

(h)    Any and all devices used to store and count money such as safes:  combinations or lock type, and money counting machines.

(i)    Weapons, handguns, and ammunition and any related evidence, such as firearms manuals, original firearms packaging, expended rounds, and gun storage or cleaning materials.

(j)    illegal controlled substances, including cocaine, PCP(phencyclidine), and heroin.

(k)    Indicia of drug trafficking, including, but not limited to, scales, cutting agents,  cutting tools, drug paraphernalia for processing and packaging and/or distributing controlled substances.

(l)    Any locked or closed containers believed to contain any of the above listed evidence.